2022 PA Super 92

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANCIS FALLON | : | |
| | : | |
| Appellant | : | No. 1011 EDA 2021 |

Appeal from the Judgment of Sentence Entered March 9, 2021
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0002198-2020

BEFORE:  DUBOW, J., McLAUGHLIN, J., and KING, J.

OPINION BY McLAUGHLIN, J.:                          **FILED MAY 19, 2022**

Francis Fallon appeals from the judgment of sentence entered following his convictions for driving under the influence of alcohol ("DUI") (general impairment) and DUI (highest rate of alcohol). 75 Pa.C.S.A. §§ 3802(a)(1) and 3802(c). He challenges the sufficiency and weight of the evidence. We affirm.

Police officers arrested Fallon after responding to a home in Delaware County for a report of a domestic dispute. The court conducted a bench trial in February 2021.

Officer Michael Wiley testified that at approximately 4 p.m. on June 11, 2020, he was dispatched to a residence in Aston, Pennsylvania for a report of a domestic dispute involving a firearm. N.T., 2/26/21, at 7. He arrived at the residence two to three minutes after receiving the call. *Id.* He testified that the house was in a residential neighborhood and there was no public

transportation in the area. *Id.* at 7 and 10. Officer Wiley testified that Fallon lived with his mother in Malvern at the time, not at the Aston residence. *Id.* at 53-54.

Officer Wiley testified that when he arrived, he saw Fallon seated on the front porch. *Id.* at 10-11. He started speaking with Fallon and "detected a strong odor of an alcoholic beverage emanating from his breath and person." *Id.* at 11. He asked Fallon how he arrived at the residence, and Fallon stated that "he drove his Chevy Colorado to the residence." *Id.* at 14. The officer "asked him how much he had to drink today," and Fallon stated that he had consumed "a six pack." *Id.* The car in the driveway was registered to Fallon. *Id.* at 24.

Officer Wiley knew one of Fallon's adult daughters was at the residence and believed a second daughter also was there. *Id.* at 15. One of the daughters was with Fallon on the porch when Officer Wiley arrived and she "seemed distraught," that is, "[u]pset, sad, kind of like a confus[ed] look on her face." *Id.* at 16. He had a discussion with the daughter and, based on that discussion, he administered field sobriety tests on Fallon. *Id.* at 17-18. Fallon was unable to complete the horizontal gaze nystagmus test ("HGN") test because Fallon moved his head along with his eyes. *Id.* at 20-21. For the walk and turn test, Officer Wiley placed Fallon in the instructional position, where the officer would demonstrate the test and Fallon was to remain in the instructional position until told to start. *Id.* at 21. Officer Wiley testified that Fallon "was unable to remain in the instructional position and was almost

falling over," and for Fallon's "safety," the officer "stopped the test." *Id.* Officer Wiley also stopped the one-legged-stand test, again because Fallon was falling over while in the instructional position. *Id.*

Officer Wiley testified that he did not observe any alcoholic beverages in the area outside of the house or inside the vehicle. *Id.* at 22, 35. Based on Officer Wiley's training and 10 years of experience, he believed Fallon was under the influence of alcohol. *Id.* at 35-36. He based this belief on the "odor of alcoholic beverage emanating obviously from his breath and person, his performance of his field sobriety tests or lack thereof, and he was very unsteady on his feet, and the statements that he made." *Id.* at 36.

Officer Wiley took Fallon into custody and searched him incident to arrest. He found car keys, a cell phone, and a wallet. *Id.* The keys were for the car parked in the driveway. *Id.* Officer Wiley checked the hood of the car, and it was warm and the vehicle "appeared to have been driven recently." *Id.*

On cross-examination, Officer Wiley admitted he never saw the vehicle move and that, although registered to Fallon, the address on the registration was the address of the residence in Aston to which the officer had responded. *Id.* at 42. He did not see Fallon in the vehicle or observe the keys in the ignition. *Id.* at 43. He did not feel the hoods of other cars to determine whether they were also hot. *Id.* at 41. Officer Wiley, however, testified he can tell the difference from when a hood is hot because the sun was beating on it and when it is hot because the vehicle was recently driven. He explained that

he "check[s] near the crack of the hood to feel heat emanating out of the crack of the hood, coming from the engine compartment area." *Id.* at 50.

After Fallon's arrest and booking, officers took him to a hospital where he consented to a blood test. *Id.* at 37. The blood draw occurred at 5:18 p.m. *Id.* at 104.

An expert in "toxicology and blood recognition of controlled substances and alcohol," Dr. Richard Cohn, testified regarding his forensic toxicology report he prepared regarding the results of the testing of Fallon's blood. *Id.* at 60. Dr. Cohn said the testing showed that Fallon had a blood alcohol concentration of 0.266 percent. *Id.* at 71. He testified that

> the blood alcohol concentration measured corresponds to an absorbed circulating pharmacologically active body burden of alcohol equivalent to approximately 13 alcoholic drinks where one drink equals one fluid once distilled spirits or four fluid ounces of wine or 12 fluid ounces of beer for an individual weighing 155 pounds.

*Id.* at 72. According to Dr. Cohn, this would indicate Fallon had consumed more than double the six-pack he admitted drinking (assuming the six-pack contained 12-fluid-ounce beers). *Id.* Dr. Cohn testified Fallon would not have been able to safely operate a vehicle. *Id.* at 73.

Fallon and the Commonwealth stipulated that Fallon's "reputation in the community is for being law abiding." *Id.* at 89-90.

The court convicted Fallon of DUI (general impairment) and DUI (highest rate of alcohol). It sentenced him to 30 days to 6 months' imprisonment. Fallon filed a post-sentence motion challenging the sufficiency

and weight of the evidence, which the trial court denied. Fallon timely appealed.

Fallon raises the following issues:

1. Did the trial court err in finding the Commonwealth presented admissible, competent and sufficient evidence that on June 11, 2020 [Fallon] operated a motor vehicle and at such time of operation [Fallon] was under the influence of alcohol that rendered him unable to safely do so, in violation of 75 Pa. C.S.A. § 3802(A)(1) & (C)[?]

2. Did the trial court err in finding the Commonwealth presented sufficient evidence that on June 11, 2020, [Fallon] (while intoxicated to a level rendering him unable to safely operate a motor vehicle) was in "actual physical control" of the motor vehicle[?]

3. Did the trial court err in finding the verdict was not against the weight of the evidence?

4. Did the trial court err in finding the Commonwealth presented sufficient evidence to enable the court, as trier of fact, to find that every element of every charge alleged against [Fallon] was proven beyond a reasonable doubt?

5. Did the trial court err in finding the Commonwealth presented sufficient evidence that the quality, weight and character of the witnesses [Fallon] presented at trial outweighed the evidence presented by the Commonwealth and present sufficient questions of doubt as to [Fallon's] guilt in this matter[?]

Fallon's Br. at 9.

In the argument section of his brief, Fallon claims the court's reliance on Fallon's admission that he operated the Chevy Colorado and drank a six-pack, absent any other proof of a crime, violated the *corpus delicti* rule. He argues there was no evidence other than his statement that he was near the vehicle, operating it, or sleeping in it; that it was running; or that he was

walking away from it. Fallon's Br. at 21. Fallon further claims that alleged "[c]hain of custody legal errors preclude the Commonwealth from proving [an] essential element [for DUI (highest rate)] – blood alcohol content." *Id.* at 29-30.[1] Fallon also makes a passing claim that the court "erroneously relie[d] upon inadmissible hearsay warranting reversal[.]" *Id.* at 21.

Fallon has waived these issues. Although at trial Fallon raised the *corpus delecti* rule, objected to the chain of custody, and made hearsay objections, he did not raise them in his Rule 1925(b) statement[1] or appellate brief's

_____

[1] Fallon raised the following issues in his Rule 1925(b) statement:

> 1. The [trial court] erred as a matter of law in finding the record possessed sufficient evidence establishing that on the date time in question . . . Fallon operated a motor vehicle and at such time of operation Defendant was under the influence of alcohol that rendered him unable to operate a motor vehicle safely.
>
> 2. The [trial court] erred in finding the record possessed sufficient evidence that on the date and specific time in question (while intoxicated to a level rendering him unable to safely operate a motor vehicle) defendant was in "actual physical control" of the motor vehicle.
>
> 3. The [trial court] erred as a matter of law in finding the verdict was not against the weight of the evidence.
>
> 4. The [trial court] erred when she found that the Commonwealth presented sufficient evidence to enable the court, as trier of fact, to find that every element of every charge alleged against [Fallon] was proven beyond a reasonable doubt.
>
> 5. The Court erred in not finding the quality, weight and character of the witnesses [Fallon] presented at trial outweighed the evidence presented by the Commonwealth

*(Footnote Continued Next Page)*

statement of questions involved. He therefore waived them. **See** Pa.R.A.P. 1925(b)(4)(vii) ("[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived"); Pa.R.A.P. 2116(a) ("[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"); **In re M.Z.T.M.W.**, 163 A.3d 462, 466 (Pa.Super. 2017) (finding an issue waived where not included in the 1925(b) statement and statement of questions involved).

In issues one, two, and four, Fallon challenges the sufficiency of the evidence to support the convictions. He contends the Commonwealth failed to present sufficient evidence that Fallon was in actual physical control of, or operated, a motor vehicle while under the influence of alcohol. He points out that Officer Wiley did not observe Fallon driving the car, know Fallon's physical condition before arriving at the location, or know when Fallon consumed the alcohol. Fallon cites cases which he says show the Superior Court "varies" in its interpretation of "actual physical control." Fallon's Br. at 16. He claims that in "operation and control" cases, the Commonwealth must prove more than a defendant being behind the wheel with the motor running. **Id.** at 18. He claims

---

and present sufficient questions of doubt as to [Fallon's] guilt in this matter.

Fallon's Concise Statement of Matters Complained of on Appeal, filed June 15, 2021, at 1-2.

that in cases where a defendant has been found to be in "actual physical control" the facts included that the driver was in the car with the car running.

Fallon also argues the Commonwealth did not establish "any temporal connection" between his sitting on the porch and "if or when he both consumed alcohol and operated a motor vehicle." *Id.* at 22. Fallon claims that the fact that the hood was warm does not prove the vehicle was recently driven, noting the officer did not feel other hoods to determine their temperature and there was no testimony regarding the weather on that day.

Fallon further maintains that even if the Commonwealth established that he drove the car sometime prior to arrival, there was no testimony regarding when he drove it. Although the officer testified there were no indicia of alcohol consumption in or near the car, the testimony did not indicate whether the police searched the area to determine whether evidence of alcohol was near the location. He claims the trial court relied on the radio call to determine the time but had previously sustained a hearsay objection to testimony about the contents of call.

When reviewing a challenge to the sufficiency of the evidence, we "must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." **Commonwealth v. Feliciano**, 67 A.3d 19, 23 (Pa.Super. 2013) (*en banc*) (quoting **Commonwealth v. Stokes**, 38 A.3d 846, 853 (Pa.Super. 2011)). "Where there is sufficient evidence to enable the trier of fact to find

every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail." *Id.* (quoting *Stokes*, 38 A.3d at 853). This standard applies equally where the Commonwealth's evidence is circumstantial. *Commonwealth v. Patterson*, 180 A.3d 1217, 1229 (Pa.Super. 2018).

The DUI-general impairment statute provides that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(a)(1).

The statute providing for the crime of DUI highest rate of alcohol states, "An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(c).

"The term 'operate' requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion." *Commonwealth v. Toland*, 995 A.2d 1242, 1246 (Pa.Super. 2010) (quoting *Commonwealth v. Brotherson*, 888 A.2d 901, 904 (Pa.Super.2005)). "The Commonwealth can establish through wholly circumstantial evidence that a defendant was driving, operating or in actual physical control of a motor

vehicle." **Id.** (quoting **Brotherson**, 888 A.2d at 905). Courts review "a combination of the following factors" to determine "whether a person had 'actual physical control' of an automobile: the motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the vehicle." **Id.** (quoting **Brotherson**, 888 A.2d at 904). "A determination of actual physical control of a vehicle is based upon the totality of the circumstances." **Id.** (quoting **Brotherson**, 888 A.2d at 905).

The trial court concluded the Commonwealth presented sufficient evidence to support the convictions:

> A review of the record in this case unequivocally demonstrates the court: 1) considered all the evidence presented at trial, including the testimony of the Commonwealth witness[es] and the exhibits and the stipulation [Fallon] had a reputation for being law abiding; and 2) determined the evidence presented at trial proved beyond a reasonable doubt [Fallon] was guilty of Driving Under the Influence. This court, based on the testimony and evidence presented by the Commonwealth, found the evidence was sufficient to prove each and every element of the offenses beyond a reasonable doubt: Officer Wiley testified [Fallon] admitted to driving the vehicle although he did not specifically observe [Fallon] driving, the hood of the car was warm to the touch, there was a strong odor of alcohol emanating from [Fallon], [Fallon] was unsteady on his feet and his eyes were red, bloodshot, and glassy, and [Fallon] was not able to satisfactorily perform the field sobriety tests. Additionally, this court considered the testimony of Dr. Richard Cohn concerning the toxicology report of [Fallon's] blood analysis and his opinion [Fallon] was unable to operate safely a motor vehicle. This court believed the testimony and evidence and did not find them weak or inconclusive.
>
> This court observed Officer Wiley's demeanor in the courtroom and concluded he demonstrated he is prudent,

reasonable, and cautious in exercising his duties and responsibilities as a police officer and Officer Wiley made a reasonable inference [Fallon's] actions and behavior constituted Driving Under the Influence. This court also considered the recent holding in **Commonwealth v. Dirosa**, 249 A.3d 586 (Pa. Super. 2021)[,] in which the evidence was sufficient to establish defendant "drove, operated or was in actual physical control" of a motor vehicle while intoxicated based upon the totality of the circumstances. Specifically[,] the defendant in **Dirosa**: was discovered in his car parked outside of a Wawa at 2:30 a.m.; had improperly parked over the clearly marked lines of a handicap stall; was passed out and slumped over the steering wheel with the engine running; and upon being awakened stated he drank three shots before leaving home. This court concluded under the totality of circumstances in [Fallon's] case, including all the testimony of Officer Wiley and Dr. Cohn, the evidence was sufficient to establish defendant "drove, operated or was in actual physical control" of a motor vehicle while intoxicated. This court agreed, under the totality of the circumstances and the facts presented at trial, the Commonwealth proved beyond a reasonable doubt all elements of the offenses charged and [Fallon] was guilty.

Trial Court Opinion, filed July 21, 2021, at 14-15.

We agree with the trial court. The Commonwealth presented sufficient evidence to prove that Fallon drove, operated, or was in actual physical control of the vehicle while intoxicated. Fallon was at the Aston residence but lived in another town, Malvern. He admitted having driven to the residence and having consumed a six-pack of beer. When Officer Wiley arrived, the hood of the car still was warm, and he did not observe any alcohol on or near the porch or in the car. The car in the driveway was registered to Fallon and Fallon had the keys. In addition, the residence was not accessible by public transportation. Officer Wiley detected a strong odor of alcohol from Fallon and Fallon was

- 11 -

unable to complete the field sobriety tests. Further, Dr. Cohn testified that Fallon had a blood alcohol concentration of 0.266, which would indicate he consumed more than a six-pack of beer. Given the totality of the circumstances and reviewing the facts in the light most favorable to the Commonwealth, as verdict-winner, the evidence was sufficient to establish Fallon drove, operated, or was in actual physical control of the vehicle while so intoxicated as to be incapable of safely driving and while having a BAC greater than 0.16.

Fallon cites numerous cases where the defendant was behind the wheel of a parked car or where the keys were in the ignition, and we found actual physical control. He relies on those cases to maintain that the evidence here was inadequate to prove that he was in actual physical control of the vehicle while intoxicated. However, he cites no cases (or any other authority) requiring the Commonwealth to prove such facts to establish a DUI. Rather, courts must consider certain factors, including "additional evidence showing that the defendant had driven the vehicle," and the totality of the circumstances, to determine whether the Commonwealth established the defendant was driving, operating, or in actual physical control of a vehicle while intoxicated. *See Toland*, 995 A.2d at 1246 (quoting *Brotherson*, 888 A.2d at 904). When we consider the requisite factors and the total circumstances involved here, we find the evidence sufficient.

In his third and fifth issues, Fallon challenges the weight of the evidence. He claims the court ignored the absence of factual support and "incredible

nature of Commonwealth witness' factual assertions and testimony." Fallon's Br. at 29. He claims the trial court ignored its evidentiary rulings on inadmissible hearsay,[2] ignored the *corpus delecti* rule, and ignored chain of custody concerns that Fallon claims should have precluded reliance on the blood alcohol content.

We review a trial court's order denying a weight challenge for an abuse of discretion. ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013). "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." ***Id.*** (citation omitted). A trial court should not grant a new trial on weight grounds "because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." ***Id.*** (citation omitted). "[T]he role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" ***Id.*** (citation omitted). Courts have stated that "a new trial should be awarded when the jury's verdict

_____

[2] The Commonwealth attempted to admit Fallon's daughter's statements as an excited utterance. The officer testified that Fallon's daughter stated "she heard banging at the door. She answered the door and Mr. Fallon was standing there with a pistol in his hand, a firearm." N.T. at 32. The court ruled this was not an excited utterance and was inadmissible. The Commonwealth wanted to admit more of her statement, which it believed would have helped with the timeline, but the court sustained the objection.

is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." ***Id.*** (citation omitted).

The trial court concluded the verdict was not against the weight of the evidence:

> This court did not abuse discretion in finding [Fallon] guilty and when it denied [Fallon's] post sentence motion challenging the weight of the evidence. This court as the trier of fact listened to all the evidence and testimony of the witnesses in the case. This court believed the evidence outlined in the Commonwealth's case, both direct and circumstantial, supported the guilty verdict. The testimony of the law enforcement officer and expert witness, including [Fallon's] statements admitting to driving the car and consuming a six-pack, [Fallon] being in possession of the keys, the hood of the car warm to the touch, Officer Wiley's observations [Fallon] was unsteady on his feet and his eyes were red, blood shot, and glassy, and [Fallon's] Blood Alcohol Content obtained within two hours of the police arriving at the location, established beyond a reasonable doubt [Fallon] had driven the vehicle and at the time he operated the motor vehicle, he was unable to operate it safely, and he was guilty of Driving Under the Influence. The court also considered the stipulation concerning [Fallon's] reputation for being a law-abiding citizen and concluded this evidence did not outweigh the evidence presented by the Commonwealth. This court assessed the witnesses who testified at trial and observed the evidence presented and was not persuaded by [Fallon's] arguments concerning the weight of the evidence. Specifically[,] the quality, weight, and character of the witnesses [Fallon] presented, consisting of the stipulation concerning [Fallon's] reputation for being law abiding, which is compelling but in this court's opinion did not outweigh the strength of the combination of facts presented by the Commonwealth. This court concluded it weighed the facts fairly, and the guilty verdict is supported by the record. The verdict is not shocking to one's sense of justice. The record shows this court exercised reasonable and sound judgment, properly applied the law, and did not

- 14 -

> commit error or abuse its discretion when it reported its verdict or in denying [Fallon's] post sentence motion challenging the weight of the evidence, and the record is void of the court showing partiality, prejudice, ill-will, and bias.

1925(a) Op. at 10-11.

This was not an abuse of discretion. The facts cited by Fallon were not "so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." ***See Clay***, 64 A.3d at 1055. That Fallon believes some evidence improperly was admitted is irrelevant to the weight claim, particularly where he did not challenge the evidentiary rulings on appeal.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: *5/19/2022*