**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ELIZABETH LORRAI SCHMID | : | |
| | : | |
| Appellant | : | No. 239 MDA 2024 |

Appeal from the Judgment of Sentence Entered January 17, 2024
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0001066-2022

BEFORE: LAZARUS, P.J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:     **FILED: FEBRUARY 5, 2025**

Elizabeth Lorrai Schmid appeals from the judgment of sentence imposed following her convictions for committing multiple violations of the Vehicle Code: driving under the influence – general impairment; driving under the influence – minor; minor prohibited from operating motor vehicle with alcohol; driving on roadways laned for traffic; and careless driving.[1] Schmid argues the court erred in denying her motion to suppress and her motion *in limine* and in overruling her objections to the admission of certain testimony. She also challenges the sufficiency of the evidence to prove careless driving. We affirm.

After Schmid was involved in a single-vehicle crash, police spoke with her at the scene and obtained a warrant for a blood draw. Blood testing

---

[1] *See* 75 Pa.C.S.A. §§ 3802(a)(1), 3802(e), 3718(a), 3309(1), and 3714(a), respectively.

revealed a blood alcohol concentration of .180%, which is above the legal limit. Schmid and her passenger, A.M., were both under 21 years of age at the time. For purposes of the relevant provisions of the Vehicle Code, Schmid was a "minor." Both Schmid and A.M. sustained significant injuries as a result of the crash. *See* Pa.R.A.P. 1925(a) Opinion, filed 4/17/24, at 2.

Before trial, Schmid moved to suppress her statements to police at the scene and the results of the blood testing for an alleged *Miranda*[2] violation. The trial court held a hearing and denied suppression. Schmid also moved pretrial to preclude evidence of the condition of her vehicle. The trial court denied that motion as well. During trial, the court overruled Schmid's objections to alleged hearsay testimony and to testimony about Schmid's consumption of alcohol.

Following a bench trial, the court convicted Schmid of the above-listed offenses. The court sentenced her to 48 hours to six months' imprisonment. The sentence also included restitution, costs, fines, and fees; Alcohol Highway Safety school; one to three months of outpatient substance-abuse treatment; a mental health evaluation and treatments; and a 12-month license suspension.

Schmid timely appealed. Her issues are as follows.

1. Did the trial court err by denying [Schmid's] Motion to Suppress?

_____

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2. Did the trial court err by denying [Schmid's] Motion to Suppress physical evidence?

3. Did the trial court err by denying [Schmid's] Motion [*in Limine*] seeking to preclude the Commonwealth from introducing or referencing testimony related to the vehicle or its contents?

4. Did the trial court err in overruling defense counsel's hearsay objection and allowing the Trooper (affiant) to testif[y] as to what the other vehicle occupant told the Trooper (affiant)?

5. Did the trial court err by overruling defense counsel's objection and permit[ting] a witness to testify about [Schmid's] consumption of alcohol?

6. Did the trial court err by finding [Schmid] guilty of Careless Driving without a sufficient showing of how [Schmid] drove carelessly?

Schmid's Br. at 6 (suggested answers omitted).

## I. Motion to Suppress Statements

Schmid first argues the court erred in denying her motion to suppress un-***Mirandized*** statements she made to Trooper George Shimko at the scene of the accident while she was receiving medical treatment in the back of an ambulance. Schmid claims he was in full uniform and "entered the ambulance from the rear door and stood in the ambulance rear doorway," giving her "no possible avenue to escape." Schmid's Br. at 9-10. Schmid argues that this amounted to custodial interrogation in the absence of ***Miranda*** warnings.

Our scope of review of a trial court's decision on a motion to suppress is limited to the record of the suppression hearing. ***Commonwealth v. Ward***, 318 A.3d 410, 413 (Pa.Super. 2024). Where the trial court has denied the motion, we will consider only the Commonwealth's evidence and the uncontradicted evidence of the defense. ***Id.*** If the trial court's factual findings

are supported by the record, they are binding on this Court. *Id.* at 413-14. Where the motion presents questions of law, our standard of review is *de novo*. *Id.* at 414.

"Statements made during custodial interrogation are presumptively involuntary, unless the accused is first advised of her *Miranda* rights." *Commonwealth v. Williams*, 941 A.2d 14, 30 (Pa.Super. 2008) (*en banc*). "Whether a person is in custody for *Miranda* purposes depends on whether the person is physically denied of her freedom of action in any significant way or is placed in a situation in which she reasonably believes that her freedom of action or movement is restricted by the interrogation." *Id.* at 30-31 (cleaned up). To make this determination, we review the totality of the circumstances, including the following factors:

> the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions.

*Id.* at 31 (citation omitted). A motorist is not in police custody for *Miranda* purposes when her freedom has been restricted only by her statutory duty under the Motor Vehicle Code to remain at the scene of an accident and provide aid and information. *Id.*; *see also* 75 Pa.C.S.A. §§ 3743, 3744.

The trial court summarized the testimony at the suppression hearing as follows.

> When he arrived on scene, Trooper Shimko observed a vehicle in a yard. Said vehicle appeared to have struck a tree, and sustained severe frontal damage. Police ran the vehicle's registration, and

observed a scarf, woman's coat and purse located in the driver's seat. [Schmid] and [A.M.], who was a passenger in the vehicle, were already receiving medical attention in separate ambulances when police arrived.

Trooper Shimko received permission from EMS to speak to [Schmid] while she was being treated in the ambulance. He spoke to [Schmid] for less than one minute to obtain information about the accident. [Schmid] was not given *Miranda* warnings prior to this conversation. [Schmid] reported that she owned the vehicle and was driving [A.M.] home. Trooper Shimko observed [Schmid] to have slurred speech, red and glassy eyes, and a strong odor of alcohol on her breath. [Schmid] and [A.M.] were then transported to a hospital to receive medical attention. At the hospital, Trooper Shimko spoke to [A.M.], who reported that [Schmid] was driving him home from a birthday party where they both consumed alcohol. Police obtained a search warrant for [Schmid's] medical records to obtain her blood alcohol concentration ("BAC"). [Schmid's] BAC was .180%, which is above the legal limit.

Opinion of Court, 7/14/23, at 2 (footnote omitted).

The court denied the motion, finding Schmid had not been in custody at the time Trooper Shimko questioned her:

Although [Schmid] argues that she was not free to leave the ambulance, the record does not reflect that police denied [Schmid] her freedom and/or that she was placed in a situation in which she could reasonably believe that her freedom of action or movement was restricted by police interrogation. By the time the police arrived on scene, [Schmid] was already receiving medical attention inside the ambulance. Trooper Shimko was given permission by EMS personnel to speak with [Schmid]. His interview with [Schmid] lasted less than one minute, and was part of a routine investigation related to the accident. . . .

No evidence was presented indicating that [Schmid] was placed in restraints by police; that Trooper Shimko showed, threatened, or used force when questioning [Schmid]; or that police trickery or deception was used.

*Id.* at 5.

We agree with the trial court that Schmid was not in police custody for *Miranda* purposes.[3] Schmid admits that Trooper Shimko questioned her at the scene of the accident, while she was receiving medical treatment. Schmid acknowledges that the door to the ambulance remained open and medical personnel were present. She does not allege that Trooper Shimko placed any restraints on her or told her or anyone else that she was not free to leave during the questioning. The questioning was brief, and Schmid does not claim that it involved force, threats, coercion, or trickery. On these facts, Schmid did not reasonably believe that her freedom of movement was restricted. *Williams*, 941 A.2d at 30-31; *see Commonwealth v. Gonzalez*, 546 A.2d 26, 30 (Pa. 1988) (finding no custodial interrogation where police asked appellant if he was hurt and what happened, where he was not under arrest and was at the scene of an accident on a public street); *Commonwealth v. Perry*, 710 A.2d 1183, 1186 (Pa.Super. 1998) (finding no custodial interrogation where appellant was questioned in an emergency room while

---

[3] The transcript of the suppression hearing is not in the certified record. It appears from the docket and certified record that Schmid requested the transcript, but it was never filed. Because Schmid does not challenge the court's recitation of the facts but rather argues that the facts as stated establish that she was subject to custodial interrogation, the absence of the transcript does not materially impede our review.

surrounded by family and medical staff, and there was no evidence that the officer pressured the appellant to answer).[4] This claim merits no relief.

## II. Motion to Suppress Results of Blood Draw

Schmid next argues the court erred in denying her motion to suppress the results of her blood draw. She contends the police obtained the warrant using the incriminating statements she made to the police without having been ***Mirandized***, rendering the contents of the blood draw the "fruit of the poisonous tree." Schmid's Br. at 11 (citation omitted).

Because we find the police did not violate Schmid's rights when questioning her in the ambulance, this argument fails.[5]

---

[4] ***See also Commonwealth v. Smith***, 555 A.2d 185, 190 (Pa.Super. 1989) (finding no custodial interrogation where the police questioned the defendant in a hospital room because "any restraint placed on [him] was for medical purposes by hospital personnel"); ***Commonwealth v. Britcher***, 563 A.2d 502, 507-08 (Pa.Super. 1989) (finding no custodial detention where officer questioned defendant in hospital emergency room and defendant was not formally arrested until later); ***Commonwealth v. Ellis***, 549 A.2d 1323, 1333 (Pa.Super. 1988) (finding no custodial interrogation where police questioned appellant in emergency ward in view of hospital personnel, questioning was brief, and appellant was not placed under arrest); ***Commonwealth v. Fento***, 526 A.2d 784, 787-90 (Pa.Super. 1987) (finding officer's routine questioning of driver was not custodial interrogation where the defendant was awaiting treatment in emergency room, hospital personnel were present, the defendant was not under arrest, and the questioning was brief and involved no trickery or deception).

[5] We note also that the police may have alternatively obtained a warrant based on A.M.'s statement to the police that Schmid had been driving.

## III. Motion *in Limine*

Schmid argues the court erred in denying her motion *in limine* asking the court to disallow testimony and photographs regarding the condition of her vehicle after the crash. We review the court's decision on a motion *in limine* for an abuse of discretion. **Commonwealth v. Gross**, 241 A.3d 413, 418 (Pa.Super. 2020). "An abuse of discretion exists where there is an overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." **Id.** (quotation marks and citation omitted).

Schmid's argument on this issue is undeveloped. The sum of her argument is that "[t]he state police had the vehicle towed," she "did not have an opportunity to inspect or photograph the vehicle and/or its contents before the vehicle was destroyed," and the denial of her motion *in limine* "permitted the Trooper to testify and the Commonwealth to submit photographs related to the vehicle." Schmid's Br. at 12. Other than a statement about the nature of motions *in limine*, Schmid's argument on this issue cites no legal authority, much less attempts to apply it to the facts of this case to establish reversible error. The lack of development of her argument renders this issue waived. **See Commonwealth v. Rush**, 959 A.2d 945, 950-51 (Pa.Super. 2008) ("[I]t is the appellant's obligation to present developed arguments and, in doing so, apply the relevant law to the facts of the case, persuade us that there were errors, and convince us relief is due because of those errors").

### IV. Objection to Hearsay

Schmid argues the court erred in overruling her objection to Trooper Shimko's testimony that A.M. told him that Schmid had been driving when the accident occurred. Schmid argues that even though A.M. testified, Trooper Shimko's testimony on this point was inadmissible hearsay.

"With regard to the admission of evidence, we give the trial court broad discretion, and we will only reverse a trial court's decision to admit or deny evidence on a showing that the trial court clearly abused its discretion." *Commonwealth v. Lang*, 275 A.3d 1072, 1077-78 (Pa.Super. 2022) (citation omitted).

Where a court in a criminal case erroneously admits evidence, a new trial is not warranted if the error was harmless beyond a reasonable doubt. *Commonwealth v. Mitchell*, 902 A.2d 430, 457 (Pa. 2006).

> An error will be deemed harmless if: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Id.* (quotation marks and citation omitted).

Here, even if the court abused its discretion in admitting the testimony, the error was harmless. A.M. testified that Schmid had been driving and confirmed that he told Trooper Shimko this. *See* N.T. at 53-54. Trooper Shimko's testimony on this point was therefore cumulative of other, properly

admitted evidence. *See Commonwealth v. Allshouse*, 36 A.3d 163, 182-83 (Pa. 2012) (finding the admission of statement was harmless error where hearsay was cumulative of declarant's properly admitted statement).

### V. Objection to Alcohol Testimony

Schmid argues the court erred in overruling her objection to A.M.'s testimony that he believed Schmid had been drinking alcohol. Schmid claims that A.M. testified he could not identify the type of drink but was nonetheless allowed to testify that Schmid had consumed a "couple of shots." Schmid's Br. at 14 (citing N.T.). Schmid argues the testimony was speculation or conjecture, and not based on personal knowledge.

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Pa.R.E. 602; *see also Slappo v. J's Dev. Assocs., Inc.*, 791 A.2d 409, 419 (Pa.Super. 2002).

At trial, the Commonwealth asked A.M. about a party he attended with Schmid prior to the accident. Regarding their consumption of alcohol, A.M. testified as follows:

Q. Okay. Was there alcohol?

A. Yes.

Q. Were you drinking?

A. Yes.

Q. Was the defendant drinking, if you know?

A. Yes.

Q. Did you see what she was drinking?

[Defense counsel]: Objection.

I -- how can he establish what she was drinking?

[Assistant District Attorney]: If he knows.

THE COURT: Well, objection overruled.

You can cross-examine on it.

Go ahead.

BY [Assistant District Attorney]:

Q. Do you know what she was drinking?

A. Yes.

Q. What was she drinking?

A. I don't -- it was liqueur. I'm not quite sure the kind. But I definitely know she had a couple of shots.

Q. Okay. So is it your -- to your knowledge, she was drinking alcohol?

A. Yes.

N.T. at 49-50.

The court explained it found A.M. had testified to personal knowledge:

In this matter, [A.M.] and [Schmid] were at the same party for a period of close to three hours. They were both drinking alcohol and he testified credibly that he had personal knowledge that she was drinking alcohol as well, including several shots. There was no error in determining that [A.M.] had personal knowledge of what [Schmid] was drinking that night.

Pa.R.A.P. 1925(a) Op. at 7.

The court did not abuse its discretion in allowing the testimony. The

Commonwealth laid a sufficient foundation to establish that A.M. personally

witnessed Schmid consuming alcohol at the party. Moreover, A.M. acknowledged that he did not know the type of alcohol or its strength. Schmid was free to cross-examine A.M. on his veracity and the basis of his knowledge.

Moreover, any error in allowing the testimony was harmless. The Commonwealth introduced other evidence that Schmid had been drinking alcohol before she drove that night, including the results of Schmid's blood draw and Trooper Shimko's observations that following the accident Schmid had slurred speech, red and glassy eyes, and breath that smelled of alcohol. This issue warrants no relief.

### VI. Evidence of Careless Driving

Finally, Schmid argues the evidence of careless driving was insufficient because there was no testimony about the way she drove. She asserts that at most, there was evidence that an accident occurred, which established ordinary negligence and failed to meet the statute's requirement that the Commonwealth prove a higher degree of culpability.

On a challenge to the sufficiency of the evidence, we employ the following standard.

> When reviewing a challenge to the sufficiency of the evidence, we "must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." **Commonwealth v. Feliciano**, 67 A.3d 19, 23 (Pa.Super. 2013) (*en banc*) (quoting **Commonwealth v. Stokes**, 38 A.3d 846, 853 (Pa.Super. 2011)). "Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the

evidence claim must fail." ***Id.*** (quoting ***Stokes***, 38 A.3d at 853). This standard applies equally where the Commonwealth's evidence is circumstantial. ***Commonwealth v. Patterson***, 180 A.3d 1217, 1229 (Pa.Super. 2018).

***Commonwealth v. Fallon***, 275 A.3d 1099, 1105 (Pa.Super. 2022).

The careless driving statute states, "Any person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense." 75 Pa.C.S.A. § 3714(a). The *mens rea* required under this section, careless disregard, "implies less than willful or wanton conduct but more than ordinary negligence or the mere absence of care under the circumstances." ***Commonwealth v. Gezovich***, 7 A.3d 300, 301 (Pa.Super. 2010) (cleaned up).

The court reviewed Trooper Shimko's testimony that Schmid had been drinking alcohol and had been driving on a straight road, with no turns, when she "came off the road, went into this property owner's yard, struck the tree, spun – I would assume counterclockwise – and then she was facing the opposite direction she was driving." Pa.R.A.P. 1925(a) Op. at 7 (quoting N.T. at 27, citing N.T. at 22, 31). The court concluded,

> This Court found that the evidence presented at trial showed that [Schmid] had indeed driven in a careless manner – she had driven after imbibing alcohol, came off a straightway road with no curves and crashed into a tree. In addition, she was driving another person who was a minor. The evidence presented showed that the elements of this summary offense were met – that of driving with a careless disregard for the safety of persons or property.

***Id.*** at 8.

We agree that the circumstantial evidence was sufficient to establish that Schmid acted not with mere negligence, but with careless disregard.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/5/2025